Rogelio **MORENO DENOSO,**
Appellant,

v.

**The STATE of Texas, Appellee.**

No. 13–99–809–CR.

Court of Appeals of Texas,
Corpus Christi–Edinburg.

Feb. 3, 2005.

Mark Alexander, McAllen, for Appellant.

Diane Palmiotti, Theodore C. Hake, Asst. Criminal Dist. Atty's, Edinburg, for State.

Before Justices HINOJOSA, YAÑEZ, and RODRIGUEZ.

## OPINION

Opinion by Justice RODRIGUEZ.

Appellant, Rogelio Moreno Denoso, was indicted on one count of intentionally and knowingly causing the death of David Chapa Quintero by shooting him with a fire-

arm.[1] Appellant entered a plea of not guilty. Tried to a jury, the charge included instructions on party and principal theories of criminal responsibility and on the affirmative defense of duress. The jury found appellant guilty of murder and assessed punishment at life imprisonment.

The trial court has certified that this case "is not a plea bargain case, and the defendant has the right of appeal." *See* TEX.R.APP. P. 25.2(a)(2). By eleven points of error, appellant complains of the following: (1) the evidence is legally and factually insufficient to support the verdict; (2) the trial court erred in admitting or excluding certain evidence including, among other things, a defense witness's testimony, appellant's statement, the autopsy report and photographs, and extraneous offense testimony; and (3) the prosecutor engaged in misconduct. We affirm the trial court's judgment.

## I. Facts

Chapa was last seen leaving a local "hang out" with appellant. According to appellant, four of their friends asked appellant to pick up Chapa and go for a ride. The friends directed appellant to drive to the location where Chapa's body was later found. There the friends allegedly killed Chapa, shooting him several times. Appellant admitted discussing killing Chapa with the others, going to the murder site earlier in the day, driving Chapa to that site, being present when the murder occurred, and watching what was happening. Appellant stated, however, he did not participate in the actual shooting. His friends ordered him to help dispose of the body. At trial, appellant asserted the defense of duress.

Chapa's badly burnt and decomposed body was found in a remote area of Hidal-go County, Texas. The Hidalgo County Sheriff's Office processed the scene and recovered several shell casings, some of which matched shell casings found at a shooting involving appellant and Chapa that occurred three months before Chapa's murder. The cause of death was determined to be from multiple shotgun wounds and a gun shot to the head.

## II. Sufficiency of the Evidence to Support Verdict on Party Theory

■ By his first point of error, appellant contends the evidence is legally and factually insufficient for a rational juror to find he was a party to the murder. Arguing that the State's theory of the case was not that appellant directly caused Chapa's death by shooting him, but that he assisted others in killing Chapa, appellant challenges only the sufficiency of the evidence as to the State's party theory.

The State, however, presented evidence on both principal and party theories. The jury was charged, without objection, on both theories, and rendered a general verdict of guilty. Because appellant has chosen not to challenge the sufficiency of the evidence on the principal theory, he has waived any argument he might have had on appeal. *See* TEX.R.APP. P. 38.1(e) (brief must state concisely all issues presented for review); *see also id.* 38.1(h) (brief must contain clear and concise argument for contentions made, with appropriate citations to authorities and record). Therefore, we will uphold the guilty verdict based on the State's principal theory. *See Rabbani v. State*, 847 S.W.2d 555, 558 (Tex.Crim.App.1992); *Edwards v. State*, 106 S.W.3d 833, 839 (Tex.App.-Dallas 2003, pet. ref'd) (if evidence of guilt is sufficient either as principal or as party, appellate court must affirm jury's verdict).

---

1. *See* TEX. PEN.CODE ANN. § 19.02 (Vernon 2003).

 Nonetheless, even were we to agree with appellant that the State asserted only a party theory at trial, a rational jury could have concluded that appellant was a party to the murder. A person commits the offense of murder if he intentionally or knowingly causes the death of another person. *See* TEX. PEN.CODE ANN. § 19.02 (Vernon 2003). A person is criminally responsible as a party to an offense if he acts with intent to promote, assist, solicit, direct, aid, or attempts to aid in the commission of an offense. *See id.* § 7.02(a)(2). Evidence is sufficient to convict under the law of parties where the defendant is physically present at the commission of the offense and encourages its commission by words or other agreement. *Ransom v. State,* 920 S.W.2d 288, 302 (Tex.Crim.App.1994). The jury may look to events occurring before, during, and after the commission of the offense in determining whether the accused participated as a party. *Id.* The jury may also rely on actions of the defendant that show an understanding and a common design to do the prohibited act. *Id.*

### A. Legal Sufficiency

 In a legal sufficiency review, we consider all of the evidence in the record in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational jury could have found the accused guilty of the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Swearingen v. State,* 101 S.W.3d 89, 97 (Tex.Crim.App. 2003). The reviewing court considers all evidence admitted at trial, whether properly or improperly admitted. *Conner v. State,* 67 S.W.3d 192, 197 (Tex.Crim.App. 2001).

Considering all of the evidence in the record in the light most favorable to the verdict, the record established that appellant met with three other men and discussed killing Chapa. Appellant traveled with the others to the murder site the afternoon before the crime, brought appellant to the predetermined site, was present during the murder, helped dispose of Chapa's body, concealed the car after the murder, and gathered with the others at his house after the murder to continue drinking until the early morning hours. Appellant's actions before, during, and after the commission of the offense show an understanding and a common design to do the prohibited act, to intentionally or knowingly cause Chapa's death. *Ransom,* 920 S.W.2d at 302. Thus, we conclude the evidence is legally sufficient to establish that appellant is criminally responsible as a party to this offense.

### B. Factual Sufficiency

 Evidence is factually insufficient only when the evidence as to an element is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *Johnson v. State,* 23 S.W.3d 1, 11 (Tex.Crim.App.2000). To review the factual sufficiency of the evidence, the appellate court must view the evidence in a neutral light. *Id.*

Appellant testified that he did not shoot Chapa. He also testified as to his affirmative defense of duress. However, reviewing the evidence in a neutral light, it is clear that the evidence of intent was not so obviously weak as to undermine confidence in the jury's verdict or greatly outweighed by contrary proof. *Id.* Accordingly, we conclude the evidence is also factually sufficient to support the verdict under the party theory.

Appellant's first point of error is overruled.

### III. Extraneous Offense

■ Appellant contends in his second point of error that the trial court erred in allowing the State to introduce extraneous offenses into evidence. The offenses appellant complains of include an attempted murder, prior killings, and other criminal activities.[2] Appellant refers this Court to testimony provided by Theresa Marie Garza, wife of the victim. She testified about a July 1997 shooting. She also testified that she heard appellant talking about robbing, kidnapping and torturing people. However, the record shows that appellant never objected to this evidence on grounds that it was impermissible extraneous offense evidence. During hearings before the trial court, defense counsel objected that (1) the attempted murder evidence was the subject of another indictment, and (2) testimony about appellant's bragging was hearsay. After overruling defense counsel's hearsay objection, the trial court asked counsel if that was going to be his only objection. Counsel responded, "That [is the only objection] I can think of now, Judge." No defense objections were made when Garza subsequently testified about these topics before the jury. Because appellant's objections to the trial court do not comport with his complaint on appeal, we overrule appellant's second point of error. See Guevara v. State, 97 S.W.3d 579, 583 (Tex.Crim.App.2003); see also Tex.R.App.

P. 33.1(a)(1)(A) (as prerequisite to presenting complaint for appellate review, record must show complaint was made to trial court by timely request, objection, or motion that stated grounds for ruling sought).

### IV. Witness Statements

■ By his third point of error, appellant contends the trial court erred in allowing into evidence the content of statements of witnesses who did not testify. Citing Schaffer v. State, 777 S.W.2d 111 (Tex. Crim.App.1989), appellant complains that the trial court erred in admitting this evidence because it was "backdoor hearsay." Id. at 113. In this case, however, the record does not show that appellant objected to the complained-of testimony as hearsay. See Tex.R.App. P. 33.1(a)(1)(A). Thus, appellant waived error, if any, related to the admission of testimony regarding the statements. See id. We overrule appellant's third point of error.

### V. Appellant's Written Statement

■ By his fourth point, appellant contends the trial court erred in admitting his written statement. He argues that the trial court should have suppressed his statement because it was not freely made and was based on a promise not to prosecute his wife.[3]

■ "A statement of an accused may be used in evidence against him if it appears that the same was freely and voluntarily made without compulsion or per-

---

2. Appellant also complains about extraneous offenses he describes as "pseudo-cop" activities. This appears to be a label given by defense counsel to actions taken by appellant, the deceased and other friends when they allegedly took the law into their own hands.

3. Appellant also complains the statement should have been suppressed because it was not accurate or true. However, when determining whether a statement was voluntarily given, the trial court does not consider whether the statement is truthful or untruthful. See State v. Terrazas, 4 S.W.3d 720, 725 (Tex. Crim.App.1999); Lopez v. State, 384 S.W.2d 345, 348 (Tex.Crim.App.1964). Therefore, truthfulness or lack thereof is not a ground for suppression of appellant's statement, and, thus, is not relevant to our review of this issue.

suasion ..." TEX.CODE CRIM. PROC. ANN. art. 38.21 (Vernon 1979). In reviewing the trial court's ruling on a motion to suppress a statement based on a claim the statement was involuntary, we give almost total deference to the trial court's determination of historical facts, especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. *State v. Ross*, 32 S.W.3d 853, 856 (Tex.Crim.App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1977); *Villarreal v. State*, 61 S.W.3d 673, 678 (Tex.App.-Corpus Christi 2001, pet. ref'd). This Court affords the same amount of deference to the trial court's ruling on application of law to fact questions, also known as mixed questions of law and fact, if the resolution of those ultimate questions turns on evaluating credibility and demeanor. *Ross*, 32 S.W.3d at 856; *Guzman*, 955 S.W.2d at 89; *Villarreal*, 61 S.W.3d at 678. However, questions of law and mixed questions of law and fact that do not turn on an evaluation of credibility and demeanor are reviewed *de novo*. *Ross*, 32 S.W.3d at 856; *Guzman*, 955 S.W.2d at 89; *Villarreal*, 61 S.W.3d at 678. We will sustain the trial court's ruling on a motion to suppress if it is correct on any theory of the law applicable to the case. *Villarreal*, 61 S.W.3d at 678.

■ Additionally, to the extent appellant is making a federal constitutional claim,

[s]ubstantive constitutional law prohibits the government from using an involuntary confession against an accused with the test for voluntariness being whether the confession is the product "of an essentially free and unconstrained choice by its maker." *Schneckloth v. Bustamonte*, 412 U.S. 218, 225, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Alvarado v. State*, 912 S.W.2d 199, 211 (Tex.Crim. App.1995) (statement is involuntary

"only if there was official, coercive conduct of such a nature that any statement obtained thereby was unlikely to have been the product of an essentially free and unconstrained choice by its maker"). *State v. Terrazas*, 4 S.W.3d 720, 723–24 (Tex.Crim.App.1999).

■ In accordance with *Jackson v. Denno*, 378 U.S. 368, 380, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), on April 13, 1999, the trial court conducted a pre-trial hearing to determine the voluntariness of appellant's statement. *See Jackson*, 378 U.S. at 380, 84 S.Ct. 1774; TEX.CODE CRIM. PROC. ANN. art. 38.22 (Vernon 1979 & Supp.2004–05); *see also Lopez v. State*, 384 S.W.2d 345, 348 (Tex.Crim.App.1964). At a *Jackson v. Denno* hearing, the trial court is the trier of fact and the judge of the credibility of the witnesses. *State v. Ballard*, 987 S.W.2d 889, 891 (Tex.Crim.App.1999); *Miniel v. State*, 831 S.W.2d 310, 315 (Tex. Crim.App.1992).

Following the hearing, the trial court found the statement was made voluntarily and, pursuant to article 38.22, section 6, of the code of criminal procedure, entered an order on May 21, 1999, containing its findings of fact and conclusions of law. *See* TEX.CODE CRIM. PROC. ANN. art. 38.22, § 6 (Vernon 1979). At the request of this Court, the trial court entered a second order on December 9, 2002.

According to the trial court's findings and our review of the record, Hidalgo County Sheriff Investigator Esteban Caro testified he took a written statement from appellant after his arrest. Caro testified that appellant was provided with and understood his *Miranda* warnings, *see* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 2 (Vernon 1979), and that appellant was not coerced or threatened in any way and was promised nothing for his statement. He explained that before signing the statement, appellant made changes to it. Again

at trial, Caro testified he did not make any direct or indirect promises to appellant in exchange for the statement. He denied using appellant's wife as leverage.

Sonia Salinas, a secretary at the Hidalgo County Sheriff's office, testified that she observed appellant signing his statement. Salinas testified appellant was provided *Miranda* warnings in Spanish. To her knowledge, appellant had not been threatened or promised anything in exchange for signing the statement.

At the suppression hearing and at trial, appellant testified he signed the statement because Caro told him that things would go well for him and that he would let his wife go as long as appellant signed the statement. He denied being provided *Miranda* warnings, although initialed warnings appear on the face of his statement.[4] Appellant claimed that his statement was placed in the waste paper basket and that he was given another statement to sign, a statement containing things he did not say.

Appellant's contention regarding the voluntariness of his statement depends upon facts that were resolved by the trial court against appellant's position. After reviewing the record, we find that the evidence is sufficient to support the trial court's factual rendition. Although appellant introduced conflicting evidence, the trial court could have found that evidence to not be credible. *See Lamb v. State,* 680 S.W.2d 11, 15 (Tex.Crim.App.1984). Giving almost total deference to a trial court's resolution of the historical facts, *see Guzman,* 955 S.W.2d at 89, we conclude the trial court correctly ruled that appellant's written statement was made voluntarily and that it was properly admitted into evidence. Appellant's fourth point of error is overruled.

## VI. Testimony of Defense Witness

■ In his fifth point of error, appellant complains that the trial court erred in denying his witness, Isauro Garcia, the opportunity to testify regarding an alleged instance where Chapa, the deceased, attacked the witness with a knife. Garcia, however, did testify about a separate crime allegedly committed by the victim in this case. Garcia testified that Chapa assaulted him with a knife, demanded his wallet and took his watch. Defense counsel then asked Garcia to describe the knife used in the alleged assault. The State objected to this question on the basis of relevancy, and the trial court sustained the objection.

Appellant contends that excluded evidence regarding the alleged attack was relevant to the credibility of the witnesses and to the nature of the relationship between the deceased and appellant. In order to preserve error, however, appellant must offer the evidence and obtain a ruling on the offer of proof. Tex.R.App. P. 33.2; Tex.R. Evid. 103(a)(2). Both the offer of the evidence and the adverse ruling of the trial court must appear in the record. The substance of the excluded evidence must be made known to the court by an offer as soon as practicable, but before the court's charge is read to the jury. Tex.R. Evid. 103(b).

■ We have reviewed the record and find that appellant did not offer the evidence and obtain the trial court's ruling on his offer of proof. Neither does the record show the substance of the testimony from the context within which the questions were asked. *See id.* at rule 103(a)(1); *see also In re N.R.C.,* 94 S.W.3d 799, 806 (Tex.App.-Houston [14th Dist.] 2002, pet. denied) (offer of proof may be made by

---

4. Although there is conflicting testimony regarding whether appellant received his *Miranda* warnings, he does not complain of improper warnings on appeal. *See* Tex.Code Crim. Proc. Ann. art. 38.22, § 2(a) (Vernon 1979).

counsel who should reasonably and specifically summarize evidence offered and state relevance unless already apparent). An appellate court cannot decide whether evidence is improperly excluded unless the evidence is included in the record for review. *McInnes v. Yamaha Motor Corp.*, 673 S.W.2d 185, 187 (Tex.1984). Accordingly, we conclude appellant has not preserved error for review, and we overrule his fifth point of error.

### VII. Autopsy Photographs

By point of error six, appellant contends the trial court erred in admitting autopsy photographs of the victim's burnt, mutilated and decomposed body. Appellant complains that the photographs were prejudicial and that they were duplicative of witness testimony and the autopsy report and, thus, had little probative value.[5] *See* TEX.R. EVID. 403.

The admissibility of photographs over a challenge is within the sound discretion of the trial court. *Rojas v. State*, 986 S.W.2d 241, 249 (Tex.Crim. App.1998); *Montgomery v. State*, 810 S.W.2d 372, 378–80 (Tex.Crim.App.1990). The trial court's decision will be reversed only if it was "outside the zone of reasonable disagreement." *Narvaiz v. State*, 840 S.W.2d 415, 429 (Tex.Crim.App.1992); *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex.Crim.App.1990) (op. on rehr'g).

Rule of evidence 403 provides that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX.R. EVID. 403. We employ the following four-prong test in reviewing a trial court's evidentiary ruling under rule 403:(1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *Erazo v. State*, 144 S.W.3d 487, 489 (Tex.Crim.App.2004); *Montgomery*, 810 S.W.2d at 389–90. In the context of the admission of photographs, we also consider the following factors: (1) the number of photographs; (2) their size; (3) whether they are in color or black and white; (4) whether they are gruesome; (5) whether the body depicted is clothed or naked; and (6) whether the body has been altered by autopsy. *Erazo*, 144 S.W.3d at 489.

> A photograph should add something that is relevant, legitimate, and logical to the testimony that accompanies it and that assists the jury in its decision—making duties. Sometimes this will, incidentally, include elements that are emotional and prejudicial. Our case law is clear on this point: If there are elements of a photograph that are genuinely helpful to the jury in making its decision, the photograph is inadmissible only if the emotional and prejudicial aspects substantially outweigh the helpful aspects.

*Id.* at 491–92.

In this case, the trial court admitted thirty-one photographs as State Exhibits 109–124, 126, 128–130, 132–133, 136–140, 142, and 145–147.[6] The four-by-six-inch color autopsy and post-autopsy photographs are of the decedent's body. They

---

5. Appellant also contends the photographs were duplicative of the State's videotape. However, we note that no videotape was made a part of the appellate record, and therefore we cannot address this contention.

6. The trial court excluded State Exhibits 125, 127, 131, 134, 135, 141, 143, and 144.

were admitted into evidence in conjunction with the testimony of Investigator Joel Castro, the identification technician with the Hidalgo County Sheriff's Department who observed and photographed the autopsy. They were introduced to show the extent of the victim's wounds and to illustrate the cause of death. *See Izaguirre v. State,* 695 S.W.2d 224, 226 (Tex.App.-Corpus Christi 1985, no pet.). Some photographs show external gunshot wounds on the victim's body, and some depict internal views of the victim's chest, brain and organs. Some show views of the victim's body from different distances and angles. The admitted photographs are gruesome and depict the victim's burned and markedly decomposed body, the location and size of the external gunshot wounds, the exposed brain, other exposed organs, and the victim's open chest cavity.

Under *Erazo's* first prong, the probative value of the evidence, we note that photographs that prove death have probative value. *Juhasz v. State,* 827 S.W.2d 397, 402 (Tex.App.-Corpus Christi 1992, pet. ref'd). Probative value is established if the photograph is needed to support the observations and conclusions of pathologists, or to otherwise corroborate evidence presented at trial. *Lewis v. State,* 505 S.W.2d 603, 604 (Tex.Crim.App. 1974). Moreover, post-autopsy photographs, similar to those in this case, have been held admissible for the purpose of aiding the jury in understanding the victim's injuries and cause of death. *See, e.g., Drew v. State,* 76 S.W.3d 436, 453 n. 4 (Tex.App.-Houston [14th Dist.] 2002, pet. ref'd) (discussing cases allowing admission of post-autopsy photographs).

In this case, the autopsy and post-autopsy photographs aided Investigator Castro in explaining the victim's injuries and the cause of death. The photographs assisted the jury in visualizing the wounds suffered by the victim for whose death the defendant was on trial. They depicted the gunshot wounds on the burned, decomposed body of the man, and were undoubtedly disturbing to the jurors. Nonetheless, we conclude the photographs had probative value in that they added something logical and relevant that made the photographs more probative than prejudicial. *See Erazo,* 144 S.W.3d at 491–92. As a result, this first factor weighs strongly in favor of admissibility.

In determining the second factor, we look at the photographs' potential to impress the jury in some irrational, yet indelible way. *Id.* at 489. "[I]f a photograph is competent, material and relevant to the issue on trial, it is not rendered inadmissible merely because it is gruesome or might tend to arouse the passions of the jury, unless it is offered solely to inflame the minds of the jury." *Id.* (quoting *Martin v. State,* 475 S.W.2d 265, 267 (Tex. Crim.App.1972)). Autopsy photographs are generally admissible unless they depict mutilation caused by the autopsy itself. *Hayes v. State,* 85 S.W.3d 809, 816 (Tex. Crim.App.2002); *Rojas,* 986 S.W.2d at 249. The main concern in these cases is that the jury might attribute certain injuries caused by the autopsy to the appellant, which would unfairly prejudice the appellant's case. *See Rojas,* 986 S.W.2d at 249. Changes rendered by the autopsy process are nonetheless of minor significance if the disturbing nature of the photograph is primarily due to the injuries caused by the appellant. *Hayes,* 85 S.W.3d at 816 (citing *Santellan v. State,* 939 S.W.2d 155, 173 (Tex.Crim.App.1997)); *Newbury v. State,* 135 S.W.3d 22, 43–44 (Tex.Crim.App.2004); *Rojas,* 986 S.W.2d at 249. Furthermore, as long as the post-autopsy photographs aid the jury in understanding the injury and do not emphasize mutilation caused by the autopsy, the photographs are admissi-

ble. *Todd v. State,* 911 S.W.2d 807, 819 (Tex.App.-El Paso 1995, no pet.).

The autopsy and post-autopsy photographs in this case show the nature and the manner of the victim's death. We cannot conclude that the images in the photographs appeal only to the jury's emotional side and encourage the jurors to make a decision on an emotional basis, and not on the basis of the other relevant evidence introduced at trial. *See Erazo,* 144 S.W.3d at 491–92. This factor weighs in favor of admissibility.

The third factor, the time needed to develop the evidence, also weighs in favor of admissibility. *See id.* Here, the State took little time before the jury to lay the foundation for the photographs and introduce them into evidence. The State introduced the photographs during Investigator Castro's testimony as demonstrative evidence to assist visually in the witness's explanation of the injuries and the manner of his death. Little time was taken to develop the evidence, relative to the length of the trial. *See Horton v. State,* 986 S.W.2d 297, 303 (Tex.App.-Waco 1999, no pet.) (holding eighteen pages of 332 pages of evidence did not significantly divert jury's attention from central issue).

Finally, in analyzing the fourth factor, the State's need for the evidence, we ask, "Does the proponent have other available evidence to establish the fact of consequence the photograph is relevant to show?" *Erazo,* 144 S.W.3d at 495. If so, we then ask, "How strong is that other evidence, and is the fact of consequence related to an issue that is in dispute?" *Id.* at 495–96.

Regarding the first and second questions, the State offered the autopsy and post-autopsy photographs to show the injuries and the manner or method of the victim's death. The burden rested with the State to prove all the elements of the crime. The strength of the other available evidence to establish the manner of death, including Investigator Castro's testimony, the death certificate and the autopsy report, was not as strong without the photographs. However, the facts of consequence the photographs were admitted to show were not in issue. Therefore, based on the answers to the questions, we are led to the conclusion that the fourth factor weighs slightly in favor of admissibility.

 Accordingly, we conclude, from a thorough analysis of the factors, that the photographs of the victim were more probative than prejudicial. The court did not abuse its discretion in admitting the autopsy and post-autopsy photographs; its decision to admit the photographs was not outside the zone of reasonable disagreement. *See Narvaiz,* 840 S.W.2d at 429. Moreover, even had the trial court erred in admitting any of the photographs, a conviction will not be reversed "merely because the jury was exposed to numerous admittedly gruesome pictures." *Drew,* 76 S.W.3d at 453 (quoting *Long v. State,* 823 S.W.2d 259, 272 (Tex.Crim.App.1991)). The appropriate standard of harm found in appellate rule 44.2(b) states that "any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." TEX.R.APP. P. 44.2(b). "A criminal conviction should not be overturned for non-constitutional error if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect." *Johnson v. State,* 967 S.W.2d 410, 417 (Tex.Crim.App.1998). After examining the record, this Court has fair assurance that error, if any, did not influence the jury at either stage of trial, or had but a slight effect. *See id.* The admission of the photographs did not affect appellant's substantial rights. *See* TEX.R.APP. P. 44.2(b); *Drew,* 76 S.W.3d at

453. We overrule appellant's sixth point of error.

## VIII. Autopsy Report

By his seventh point of error, appellant complains that the trial court erred in admitting the autopsy report. Generally, autopsy reports are admissible pursuant to the public record and business record exceptions to the hearsay rule.[7] *See* TEX.R. EVID. 803(6); TEX.R. EVID. 803(8); *Butler v. State*, 872 S.W.2d 227, 238 (Tex.Crim.App. 1994); *Garcia v. State*, 868 S.W.2d 337, 338 (Tex.Crim.App.1993). An autopsy report is provided by a medical examiner who holds a public office, *see* TEX.CODE CRIM. PROC. ANN. art. 49.25, § 1 (Vernon Supp. 2004–2005), and who has duties related to the preparation and filing of a report stating the cause of death, duties imposed by law.[8] *Id.* at art. 49, §§ 6, 9 and 11; *Butler*, 872 S.W.2d at 237–38 (citing TEX.R. EVID. 803(8)(B)); *Garcia*, 868 S.W.2d at 340–42. Moreover, the autopsy report is subject to required public disclosure. TEX. CODE CRIM. PROC. ANN. art. 49.25, § 11 (Vernon Supp.2004–2005).

### A. Law Enforcement Exclusion

■ Appellant does not challenge the general proposition that an autopsy report may be admissible as a public record. He does, however, contend the exclusion set out in rule of evidence 803(8)(B) applies because the forensic pathologist who prepared the report falls into the category of "other law enforcement personnel." *See* TEX.R. EVID. 803(8)(B). Rule 803(8)(B) provides, in relevant part, that public records and reports include "reports ... setting forth ... matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding in criminal cases matters observed by police offices and other law enforcement personnel...." *Id.*

In *Cruz v. State*, 827 S.W.2d 83, 84–86 (Tex.App.-Corpus Christi 1992, no pet.), without the benefit of the opinion on rehearing in *Cole v. State*, 839 S.W.2d 798 (Tex.Crim.App.1992) (opinion on rehearing), this Court concluded that an autopsy report was inadmissible because medical examiners are "law enforcement personnel." *See Cruz*, 827 S.W.2d at 86. Subsequently, however, the Texas Court of Criminal Appeals applied the two-prong test set out in *Cole's* opinion on rehearing and held "as a general rule, medical examiners are not considered 'other law enforcement personnel' under Rule 803(8)(B) as far as their duties relate to the preparation of autopsy reports." *Garcia*, 868 S.W.2d at 342.

Likewise, applying the *Cole* test, we conclude that the autopsy report in this case was prepared by one who is not considered "other law enforcement personnel" under rule 803(8)(B). *See id.* Even though autopsy reports are partially subjective, they are generally prepared by officials with no motive to fabricate the results of the reports, and as a general rule, a medical examiner's office is not such a uniquely litigious and prosecution-oriented environment as to create an adversarial context. *See id.* Appellant only generally com-

---

7. "Autopsy" is defined as "a post mortem examination of the body of a person, including X-rays and an examination of the internal organs and structures after dissection, to determine the cause of death or the nature of any pathological changes that may have contributed to the death." TEX CODE CRIM. PROC. ANN. art. 49.01(1) (Vernon Supp.2004–2005).

8. In this case, the autopsy report, authorized by Arnoldo Corpus, Justice of the Peace, Precinct 3, Hidalgo County, Texas, was prepared by forensic pathologist, Ruben C. Santos, M.D.

plains that the exclusion applies because the one who prepared the autopsy report was a law enforcement officer. He does not complain, and the record does not support, that the autopsy report was not an objective, routine, scientific determination of an unambiguous factual nature prepared by one with an inherent motivation to distort the results, or that the report was prepared by an official with a motive to fabricate the result. *See id.* Accordingly, we conclude the examiner in this case was not "other law enforcement personnel" under rule 803(8)(B) as far as his duties related to the preparation of the autopsy report. Because we conclude the exclusion found in rule 803(8)(B) does not apply, the autopsy report in this case was admissible under the public records exception to the hearsay rule. *See Butler,* 872 S.W.2d at 238.

## B. Confrontation Rights

We next turn to appellant's argument that the autopsy report was inadmissible under the confrontation clause because the pathologist who prepared the report did not, and in fact could not, testify at trial because he had died. We review the trial court's ruling *de novo* in deciding this constitutional issue.[9] *Lilly v. Virginia,* 527 U.S. 116, 134, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999); *Wall v. State,* 143 S.W.3d 846, 849 (Tex.App.-Corpus Christi 2004, pet. filed).

The United States Supreme Court recently set out the test for determining the admissibility of evidence subject to a confrontation challenge. *See Crawford v. Washington,* 541 U.S. 36, 124

S.Ct. 1354, 1369, 158 L.Ed.2d 177 (2004). The threshold question is whether the autopsy report was testimonial or non-testimonial in nature. *See id.* at 1374; *Woods v. State,*152 S.W.3d 105 (Tex.Crim. App., 2004); *Wall,* 143 S.W.3d at 850; *Brooks v. State,* 132 S.W.3d 702, 705 (Tex.App.-Dallas 2004, pet. filed). "Prior to the Supreme Court's decision in *Crawford,* hearsay statements were admissible for purposes of the Confrontation Clause if they possessed adequate 'indicia of reliability.'" *Woods,* at 112 (citing *Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980)). In *Crawford,* however, the Supreme Court drew a distinction between testimonial and non-testimonial statements. *Id.* The admission of testimonial hearsay violates the Sixth Amendment unless the declarant is unavailable to testify, and the defendant had a prior opportunity to cross-examine the declarant. *Crawford,* 124 S.Ct. at 1374; *Wall,* 143 S.W.3d at 850–51. While declining to spell out a comprehensive definition of testimonial statements, the Supreme Court stated that testimonial hearsay "applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Crawford,* 124 S.Ct. at 1374; *Woods,* at 112. "[W]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: Confrontation." *Crawford,* 124 S.Ct. at 1374.

In *Wall,* this Court held that the admission of a statement given in response to

9. Appellant contends he was denied his confrontation right under the United States Constitution and under the Texas Constitution. However, because appellant does not brief his claims separately, we assume he claims no greater protection under the state constitution. Therefore, we apply only the Confronta-

tion Clause of the Sixth Amendment of the United States Constitution to this analysis. *See Wall v. State,* 143 S.W.3d 846, 849 (Tex. App.-Corpus Christi 2004, pet. filed) (citing *Lagrone v. State,* 942 S.W.2d 602, 614 (Tex. Crim.App.1997)).

investigative questioning by a deputy—testimonial hearsay—violated the appellant's right to confrontation under the Sixth Amendment. *Wall,* 143 S.W.3d at 851. *Compare Gutierrez v. State,* 150 S.W.3d 827, 830 (Tex.App.-Houston [14th Dist.] 2004, no pet.) (co-defendant's videotaped statement given voluntarily to police qualifies as testimonial statement as matter of law); *Samarron v. State,* 150 S.W.3d 701, 705–08 (Tex.App.-San Antonio, pet. filed) (witness's formal, signed, written statement given after being questioned by detective at police station held testimonial); *Brooks,* 132 S.W.3d at 705 (non-testifying co-defendant's written custodial statement determined testimonial in nature); *Lee v. State,* 143 S.W.3d 565, 570 (Tex.App.-Dallas 2004, no pet.) (co-defendant's out-of-court statement made in response to questions of officer during roadside stop after appellant had been arrested held testimonial); *with Woods,* at 112 (held casual remarks spontaneously made to acquaintances non-testimonial); *Wiggins v. State,* 152 S.W.3d 656 (Tex.App.-Texarkana, 2004, pet. filed) (designated for publication) (co-conspirator's statements made in furtherance of conspiracy non-testimonial); *Wilson v. State,* 151 S.W.3d 694 (Tex.App.-Fort Worth, 2004, pet. filed) (designated for publication) (witness's statement not testimonial, more in nature of inquiry initiated by witness); *Cassidy v. State,* 149 S.W.3d 712, 716 (Tex.App.-Austin 2004, pet. ref'd) (interview of witness by police officer at hospital, shortly after assault, not interrogation; not testimonial hearsay).

In the present case, a certified copy of the autopsy report was admitted into evidence. The report set forth matters observed pursuant to a duty imposed by law. *See Butler,* 872 S.W.2d at 237–38 (citing Tex.R. Evid. 803(8)(B)). The report revealed that the body was found in an advanced state of decomposition apparently partially burned by fire. It approximated the post-mortem interval at one to two weeks. The report contained observations about the victim's body, hair, and teeth. It determined the length and approximate weight of the body and the condition of various body parts. The report also contained observations about tattoos and articles of partially burned clothing found on the body. The report set out the location and the nature of injuries. It also determined the cause of death as,

> [m]ultiple shotgun wounds and gunshot wound to the head[.] Shotgun wound to the back of the head and neck with brain injury and multiple fractures secondary to the explosive force of the pellet load[.] Gunshot wound to the left side of the head with brain injury and multiple fractures of crania vault and base secondary to explosive force of the bullet[.] Shotgun wound to right side of the chest with injury to the right lung.

Based on our review, the autopsy report in this case does not fall within the categories of testimonial evidence described in *Crawford.* It is not prior testimony at a preliminary hearing, before a grand jury, or at a former trial. *Crawford,* 124 S.Ct. at 1374. It is not a statement given in response to police interrogations. *See id.* Because the autopsy report was non-testimonial in nature, the new rule articulated in *Crawford* is not applicable in this case. *See Woods,* at 112.

 Moreover, even if the introduction of the autopsy report without the forensic pathologist's testimony was error, the error would be harmless. Tex.R.App. P. 44.2(a). The evidence presented by the State, even without the report, was sufficient upon which to base a finding that appellant was guilty. If the admission of the report violated either the rules of evidence or the confrontation clause, this

Court is satisfied beyond a reasonable doubt that it did not contribute to the conviction or punishment. *See id.* We overrule appellant's seventh point of error.

## IX. State's Efforts to Subpoena Certain Witnesses

██ By his eighth point of error, appellant appears to contend that the trial court erred in allowing Raul Gonzalez, a criminal investigator with the Mission Police Department, to testify regarding his service of subpoenas on Eduardo Barbosa and Monica Maria Contreras and his attempted service on Humberto Villanueva. Appellant argues that a false impression was created when the trial court allowed the State to discuss the failure of witnesses to appear and then refused to allow the defense "to show lack of good faith by the State when [the State] allegedly knew and let one of its witnesses go to Mexico." However, appellant does not provide record references to evidence he claims should have been excluded. *See* TEX. R.APP. P. 38.1(h). Appellant only cites portions of a hearing outside the jury's presence where the trial court and counsel discussed Gonzalez's testimony. Appellant cites neither to Gonzalez's testimony nor to exhibits. Moreover, appellant does not cite authority for the proposition that the trial court was required to exclude this evidence. *See id.; Cardenas v. State,* 30 S.W.3d 384, 393 (Tex.Crim.App.2000). Appellant's eighth point of error is overruled.

## X. Failure to Produce Reports or Admit Production of Reports

██ By his ninth point of error, appellant appears to be complaining about either an error on the part of the trial court in failing to order the State to produce "several reports" or its failure to exclude those reports. However, appellant cites only to the record of a hearing held near the end of trial and outside the jury's presence. The trial court asked about "bills of proof." The defense counsel offered defense exhibits two through six, as "examples of the State's conduct in failing to produce statements." [10] At the hearing, defense counsel argued that the "statements should have been introduced or allowed to be introduced. . . ."

██ Appellant, however, does not cite to a portion of the record where he requested that the trial court order the State to produce these reports, or where the reports were offered during the course of the trial and the trial court refused to admit the evidence. Neither does appellant cite authority to support this point of error. *See* TEX.R.APP. P. 38.1(h). A reviewing court "will not brief appellant's case for him." *Garcia v. State,* 887 S.W.2d 862, 882 (Tex.Crim.App.1994). Appellant's ninth point of error is overruled.

## XI. Evidentiary Rulings

██ Appellant states in his tenth point of error that the trial court reversibly erred in making several evidentiary rulings. However, there is no argument supporting this point of error. The appellate rules and our case law demand that appellant "present his own case, stating his specific legal argument, specifying and citing from the record the factual bases for his argument, and preservation of error in the record, and argue case law, explaining

---

10. Defense exhibits two and three are Mission police reports of the July 22, 1997 shooting. Exhibit four is an affidavit from Theresa Garza signed on July 23, 1997, expressing a desire to file criminal charges against appel-

lant for the shooting. Defense exhibit five is a September 30, 1997 statement signed by Rosalinda De La Cruz. Finally, defense exhibit six is *Miranda* warnings in Spanish, initialed and signed by Rosalinda De La Cruz.

its pertinence to his argument." *Id.* This point is inadequately briefed.

We further note that the evidentiary ruling found in the one record cite provided by appellant is a ruling favorable to the defense. Thus, no error stems from the trial court's ruling. Point of error ten is overruled.

### XII. Prosecutorial Misconduct

■ Finally, by his eleventh point of error, appellant asserts that the conduct of the prosecutor denied him due process, a fair trial, due course of law, and effective assistance of counsel. Appellant asserts that "[t]he number [of comments] was so great that there can be little doubt they had an impact on the jury." However, appellant does not explain or discuss the specific sidebar remarks and does not assert how they harmed him. Appellant also generally references volumes five through fifteen of the reporter's record to support this complaint that the sidebar remarks begin from the beginning of the trial and continue until the end. This general record citation encompasses most of the trial record—from the State's direct examination of one of the hunters who discovered the victim's body to the polling of the jury on its guilty verdict. Yet, there are no specific cites to the record. We also note that a portion of the record about which he complains took place outside of the jury's presence. Again, we will not brief appellant's argument for him. *See id.*

■ Moreover, complaints about a prosecutor's inappropriate comments about opposing counsel before the jury must be preserved by an objection. *Garcia v. State,* 126 S.W.3d 921, 925 (Tex. Crim.App.2004); *Cannady v. State,* 11 S.W.3d 205, 211–14 (Tex.Crim.App.2000). In many instances, an instruction to disregard will cure any error related to negative comments made about opposing

counsel. *Cannady,* 11 S.W.3d at 211–14. Because appellant failed to make specific, timely objections to the instances about which he now complains, he has not preserved error for our review. *See* Tex. R.App. P. 33.1(a)(1)(A).

■ Finally, regarding his ineffective assistance of counsel claim, appellant fails to cite authority and posit arguments to establish the *Strickland* elements of ineffective assistance of counsel. *See Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Appellant has waived this claim. *See* Tex.R.App. P. 38.1(h); *Cardenas,* 30 S.W.3d at 393. We overrule appellant's eleventh point of error.

### XIII. Conclusion

Accordingly, the judgment of the trial court is affirmed.