

NUMBERS  13-08-00406-CR
13-08-00407-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

CHARLES DAVIS, JR.,                                                Appellant,

v.

THE STATE OF TEXAS,                                             Appellee.

---

**On appeal from the 130th District Court
of Matagorda County, Texas.**

---

# MEMORANDUM OPINION

**Before Justices Yañez, Rodriguez, and Benavides
Memorandum Opinion by Justice Rodriguez**

Appellant Charles Davis, Jr. appeals from his convictions for sexual assault of a

child in appellate cause number 13-08-00407-CR, and for tampering with a witness in

appellate cause number 13-08-00406-CR.[1]  *See* Tex. Penal Code Ann. § 22.011(2) (Vernon Supp. 2008), § 36.05 (Vernon 2003).  After a trial on the merits, a jury found Davis guilty and sentenced him to fifty years' imprisonment for the assault charge and two years' imprisonment for the tampering charge and assessed a $10,000 fine for each offense. Davis appeals his convictions by seven issues, arguing that:  (1) the evidence was legally and factually insufficient to support his sexual assault conviction; (2) the evidence was legally and factually insufficient to support his tampering conviction; (3) the trial court erred in failing to admit evidence that the victim had been thrown out of her father's home; (4) the trial court erred in overruling objections to improper jury argument; and (5) the trial court erred when it refused to include certain language in the jury charge related to law of the parties.  We affirm.

## I.  BACKGROUND

In December 2006, fifteen-year-old B.W. had sexual intercourse with Jesse Romero, an adult, on several occasions.[2]  At the time, B.W. lived with her mother and Davis, her mother's boyfriend; B.W.'s mother, Romero, and Davis often "partied" together on the weekends.

In early 2007, B.W. confided in her school friends about her sexual encounters with Romero.  Her friends informed the school nurse who, in turn, notified Charlotte Brown, a Matagorda County Sheriff's Department investigator.  Brown interviewed B.W.  At this first meeting with Brown, B.W. described what had happened between her and Romero. However, at subsequent interviews, Brown noted that B.W. was increasingly unwilling to

---

[1]  Because our consideration of Davis's issues in each appeal will be dispositive of both appeals, we have consolidated the appeals into this one opinion.  *See* Tex. R. App. P. 47.1.

[2]  Romero later pled guilty to the charge of sexual assault of a minor and was convicted.

discuss the incidents.  Brown eventually learned that Davis had threatened to kick B.W. out of his house if B.W. did not renege her allegations against Romero.  As a result of her interviews with B.W., Brown obtained two statements from B.W. describing several incidents of sexual intercourse between B.W. and Romero occurring throughout December 2006.

Brown contacted Romero regarding B.W.'s allegations, and Romero signed a written statement admitting to the sexual encounters with B.W..  It was at this time that Brown learned of Davis's involvement.  Romero informed Brown that Davis had arranged for Romero to have sex with B.W. in exchange for Romero providing Davis with crack cocaine.  Davis was then indicted for (1) sexual assault by facilitating the sex between Romero and B.W. and (2) tampering with a witness by threatening to kick B.W. out of the house unless she dropped the charges against Romero.  Davis pleaded not guilty and was subsequently convicted by a jury on both charges.  The jury assessed punishment, sentencing Davis to fifty years' confinement for sexual assault and two years' confinement for witness tampering and imposed a $10,000 fine for each offense.  Davis appealed from each conviction.

## II.  DISCUSSION

A.  Legal and Factual Sufficiency

1.  Standard of Review

In conducting a legal sufficiency review, we view the relevant evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19

(1979)); *Escamilla v. State*, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004). We do not reevaluate the weight and credibility of the evidence, and we do not substitute our own judgment for the trier of fact. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000) (en banc); *Beckham v. State*, 29 S.W.3d 148, 151 (Tex. App.–Houston [14th Dist.] 2000, pet. ref'd). Instead, we consider whether the jury reached a rational decision. *Beckham*, 29 S.W.3d at 151.

In a factual sufficiency review, we view all of the evidence in a neutral light in order to determine whether a jury was rationally justified in finding guilt beyond a reasonable doubt. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). Evidence may be factually insufficient if: (1) it is so weak as to be clearly wrong and manifestly unjust, or (2) the jury's verdict is against the great weight and preponderance of the available evidence. *Id*. "Although authorized to disagree with the jury's determination even if probative evidence exists which supports the verdict, a reviewing court must give due deference to the fact finder's determinations concerning the weight and credibility of the evidence and will reverse the fact finder's determination only to arrest the occurrence of a manifest injustice." *Swearingen v. State*, 101 S.W.3d 89, 97 (Tex. Crim. App. 2003). Unless we can say with some objective basis in the record that the great weight and preponderance of the evidence contradicts the jury's verdict, we will not reverse the judgment as factually insufficient. *Watson*, 204 S.W.3d at 417.

Both legal and factual sufficiency are measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *Adi v. State*, 94 S.W.3d 124, 131 (Tex. App.–Corpus Christi 2002, pet.

4

ref'd). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Gollihar v. State*, 46 S.W.3d 243, 253 (Tex. Crim. App. 2001); *Malik*, 953 S.W.2d at 240.

    2.  Sexual Assault (Cause No. 13-08-00407-CR)

In his first and second issues, Davis challenges the sufficiency of the evidence supporting his conviction for sexual assault of a child. Davis concedes that Romero sexually assaulted B.W. but denies that the evidence proves he was a party to the offense. To obtain a conviction for sexual assault of a child, the State must prove that the defendant intentionally or knowingly "cause[d] the penetration of the anus or sexual organ of a child by any means . . . ." TEX. PENAL CODE ANN. § 22.011(a)(2)(A). Relevant to this case, "[a] person is criminally responsible as a party to an offense if the offense is committed . . . by the conduct of another for which he is criminally responsible . . . ." *Id.* § 7.01(a) (Vernon 2003). A defendant "is criminally responsible for the conduct of another if[,] . . . acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense . . . ." *Id.* § 7.02(a)(2) (Vernon 2003). If the defendant is physically present at the commission of the offense and encourages its commission by words or other agreement, the evidence is sufficient to convict under the law of parties. *Moreno Denoso v. State*, 156 S.W.3d 166, 173 (Tex. App.–Corpus Christi 2005, pet. ref'd) (citing *Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App.1994)). "The jury may look to events occurring before, during, and after the

commission of the offense in determining whether the accused participated as a party." *Id*.

Here, the jury was presented with evidence that Romero, Davis, and B.W.'s mother were friends who often drank and did drugs together. The evidence showed that B.W. was present on many of these occasions. The jury heard testimony from Brown that Romero admitted to having sex with B.W. Brown testified that, in Romero's statement, he revealed that Davis and B.W.'s mother arranged for Romero to have sex with B.W. in exchange for Romero providing them with crack cocaine. In his testimony at trial, Romero confirmed this statement and further stated that he had told Davis on prior occasions that he was attracted to B.W. Romero also testified that Davis was in the apartment while Romero had sex with B.W.; Romero stated that, after he and Davis made the sex for drugs deal, Davis and B.W.'s mother went to the apartment bedroom while Romero stayed in the living room and had sex with B.W. there. B.W. testified that, on the night of the assault, Davis and Romero gave her wine to drink and that she became slightly intoxicated; however, B.W. insisted that she was still sufficiently lucid to understand what was happening around her. B.W. testified that, on that night, she overheard Davis making the arrangement with Romero that Romero could have sex with B.W. if Romero would supply Davis with crack cocaine. B.W. testified that she was embarrassed by her sexual encounters and that she was too ashamed to tell anyone that her mother and her mother's boyfriend had traded her for drugs.

At trial, the jury also heard the following evidence contrary to the verdict: B.W. did not mention the arrangement made between Romero and Davis in her statements to Brown; Romero testified that he believed Davis bore no responsibility for his sexual

6

encounters with B.W.; Romero also gave inconsistent testimony regarding his prior convictions for driving while intoxicated, which defense counsel attempted to use to impeach Romero's statements regarding the sexual assault; B.W. gave somewhat conflicting accounts of whether her mother was present on the night of the assault and had trouble recalling the exact dates of her sexual encounters with Romero.

Based on this evidence, the jury could have rationally concluded that Davis assisted Romero in the commission of sexual assault of a child. *See Moreno Denoso,* 156 S.W.3d at 173; *Beckham,* 29 S.W.3d at 151. That B.W. did not initially inform Brown of the sex-for-drugs exchange is explained by B.W.'s embarrassment regarding the situation. Moreover, the evidence contrary to the verdict is primarily based on contradicting or inconsistent witness testimony. It is not our place, however, to second guess the determinations made by the jury regarding the credibility of the witnesses and the weight given to evidence. *See* TEX. CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979) (stating that the jury is the sole judge of the facts, the credibility of the witnesses, and the weight given to testimony). We will not disturb the verdict on account of conflicts in the testimony, an issue which the jury was best situated to resolve. *See Beckham,* 29 S.W.3d at 151-52 (holding that conflicts in testimony "do not destroy the sufficiency of the evidence" and that it is the exclusive duty of the jury to resolve contradicting evidence and testimony).

Thus, viewing the evidence in the light most favorable to the verdict, we conclude that there was legally sufficient evidence to prove that Davis committed sexual assault by encouraging Romero to have sex with B.W. *See* TEX. PENAL CODE ANN. § 7.02(a)(2); *Moreno Denoso,* 156 S.W.3d at 173; *Hooper,* 214 S.W.3d at 13. Furthermore, we cannot

7

say that the evidence was so weak that Davis's conviction was against the great weight and preponderance of the evidence or manifestly unjust. *See Watson*, 204 S.W.3d at 414-15. Therefore, we conclude that the evidence was factually sufficient, as well. *See id*. Davis's first and second issues are overruled.

3. Witness Tampering (Cause No. 13-08-00406-CR)

By his third and fourth issues, Davis contends that the evidence was both legally and factually insufficient to support his conviction for tampering with a witness. To convict Davis of tampering, the State must have proven that, with the intent to influence B.W., Davis coerced her to withhold information in an official proceeding. *See* TEX. PENAL CODE. ANN. § 36.05(a)(2). At trial, the jury heard testimony from Brown that B.W. fully cooperated with Brown at the beginning of her investigation. Brown testified further that, after B.W. informed her mother and Davis about her report of sexual assault, B.W. would no longer speak with Brown in detail about the incidents. When Brown confronted B.W. about the situation, B.W. broke down and started sobbing; Brown testified that B.W. then revealed to her that Davis had threatened to kick B.W. out of the house if she did not drop the charges against Romero. In her testimony, B.W. confirmed that Davis had made that threat.

Davis concedes that he threatened to kick B.W. out of the house but argues that he did so not because he wanted her to drop the charges against Romero but because he believed B.W. was lying about her sexual encounters with Romero. Davis also contends that B.W. refused to follow the rules of his house and that he had warned B.W. previously that he would kick her out if she ever became pregnant or if, in general, her allegedly bad behavior continued. As evidence that B.W. is not a credible witness, Davis points to B.W.'s

8

testimony at trial that she did not remember making a statement regarding tampering. Nonetheless, Davis directs the Court to no evidence that his true intention to kick B.W. out of the house was not motivated by his desire to see the sexual assault charges against Romero dropped. And as previously discussed, it is the jury's role, not ours, to judge the credibility of the witnesses and weigh the evidence. *See* TEX. CODE CRIM. PROC. ANN. art. 38.04. Therefore, in light of the testimony by Brown regarding B.W.'s distraught condition and B.W.'s own testimony regarding Davis's threats, we conclude that the jury acted rationally in determining that Davis intended to coerce B.W. into dropping the charges against Romero by threatening to kick her out of the house. *See* TEX. PENAL CODE. ANN. § 36.05(a)(2); *Beckham*, 29 S.W.3d at 151. Viewing the evidence in the light most favorable to the verdict, we hold that there was legally sufficient evidence to convict Davis of witness tampering. *See Hooper*, 214 S.W.3d at 13. Moreover, we conclude that the evidence was factually sufficient because it was not so weak as to render the verdict manifestly unjust. *See Watson*, 204 S.W.3d at 414-15. Accordingly, we overrule Davis's third and fourth issues.

B. Admission of Evidence

1. Standard of Review

A trial court's decision to admit or exclude evidence is reviewed for abuse of discretion. *Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005). Under an abuse of discretion review, we will uphold the decision of the trial court unless it lies outside the zone of reasonable disagreement. *Id*.

## 2. Analysis

In his fifth issue, Davis argues that the trial court erred in excluding evidence that B.W.'s father had recently kicked her out of his house. Without any detailed analysis, Davis simply contends that the evidence was relevant, specifically, that the evidence was more probative than prejudicial in establishing that B.W. had motive for making false accusations against Davis. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX. R. EVID. 401. Irrelevant evidence is not admissible and, thus, properly excluded by the trial court. TEX. R. EVID. 402. Rule 403 further provides that relevant evidence may nonetheless be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice . . . or needless presentation of cumulative evidence." TEX. R. EVID. 403.

The State contends that Davis failed to connect the actions taken by B.W.'s father, if any,[3] to B.W.'s alleged motive to make false accusations against Davis. We agree. Without more, we fail to see how the threats made or actions taken by a third-party had any bearing on B.W.'s motive in relation to Davis. *See* TEX. R. EVID. 401. And regardless, we afford the trial court "very substantial deference in balancing probative value on the one hand and unfair prejudice on the other" and will not reverse the court's decision just because we might have "decided the matter otherwise." *See Powell v. State*, 189 S.W.3d 285, 288 (Tex. Crim. App. 2006) (citation omitted). Moreover, we note that this evidence

---

[3] Davis's interpretation of the facts surrounding B.W.'s move from her father's to her mother's house is disputed. B.W. testified at trial that she chose to leave her father's house. B.W. testified that she missed being around her mother and that, as a teenage girl, she felt her mother would be a more understanding and sympathetic parent.

10

is cumulative of other evidence adduced at trial. *See* TEX. R. EVID. 403. It is uncontested that Davis had previously threatened to kick B.W. out if she became pregnant. This evidence serves to establish a motive, if any, for B.W. to make false accusations against Davis; the additional evidence regarding B.W.'s father's decision to kick her out, if true, does not lend any additional weight to this theory.

Therefore, we conclude that the trial court did not abuse its discretion in excluding Davis's purported evidence. *See* TEX. R. EVID. 402; *Martin*, 173 S.W.3d at 467. Davis's fifth issue is overruled.

## C. Improper Jury Argument

By his sixth issue, Davis complains that the trial court erred in overruling his objection to improper jury argument by the State. In particular, Davis argues that the prosecution's use of the word "rape" in its closing argument improperly inflamed and prejudiced the jury. The record shows that the prosecution first used the word "rape" in its opening statement. However, Davis did not object to improper jury argument until the prosecution's later use of the word in its closing statement.

Additionally, Davis's objection at trial does not match his issue on appeal. *See Resendiz v. State*, 112 S.W.3d 541, 547 (Tex. Crim. App. 2003) (holding that where an appellant's trial objection "does not comport with" the issue he raises on appeal, he has not preserved the issue for review). At trial, Davis objected to the prosecution's use of the word "rape" on the basis that it has no statutory definition; whereas on appeal, Davis argues that the use of the word inflamed and prejudiced the jury.

Because he waited until the end of trial to make any objection, we conclude that Davis waived this issue by failing to timely object. *See* TEX. R. APP. P. 33.1(a)(1) (stating

11

that a timely objection is a prerequisite to maintaining a complaint on appeal).  We also conclude that Davis failed to preserve this issue for our review because his objection at trial did not comport with his issue on appeal.  *See Resendiz*, 112 S.W.3d at 547.  Accordingly, we overrule Davis's sixth issue.

D.  Charge Error

In his seventh and final issue, Davis argues that the trial court erred in denying his request for certain language to be included in the sexual assault jury charge.  Davis complains that he was harmed when the trial court declined to include this language from the following law-of-the-parties provision of the penal code:  "Each party to an offense may be charged with commission of the offense."  *See* TEX. PENAL CODE. ANN. § 7.01(b).  The relevant portion of the jury charge read as follows:

> All persons are parties to an offense who are guilty of acting together in the commission of the offense.  *A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or both*.
>
> *A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense*.  Mere presence alone will not constitute one a party to an offense.

(emphasis added).

"Our first duty in analyzing a jury-charge issue is to decide whether error exists." *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2006).  If error exists, we then inquire whether the error harmed the defendant.  *Id*.  A jury charge that tracks the language of the relevant statute is sufficient and, therefore, not erroneous.  *Riddle v. State*, 888 S.W.2d 1, 8 (Tex. Crim. App. 1994); *Escobar v. State*, 28 S.W.3d 767, 778 (Tex. App.–Corpus Christi

12

2000, no pet.) ("A charge provision that tracks the relevant statute is sufficient."). Here, the language of the charge given to the jury at Davis's trial, in particular the emphasized language outlined above, states the penal code's law-of-the-parties language verbatim. *See* TEX. PENAL CODE ANN. §§ 7.01-.02. Davis does not explain to the Court why inclusion of the requested sentence—"Each party to an offense may be charged with commission of the offense"—was also necessary to the charge, and we conclude that it was not. Because the jury charge directly tracked the language of the statute, we conclude there was no error in the charge, and the trial court did not err in denying Davis's request for inclusion of superfluous language. *See Riddle*, 888 S.W.2d at 8 (holding that "[a] jury charge which tracks the language of a particular statute is a proper charge on the statutory issue"). Davis's seventh issue is overruled.

### III. CONCLUSION

The judgments of trial court are affirmed.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Memorandum Opinion delivered and
filed this 26th day of August, 2009.